# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | **Case No. CR 04-S-094-NE** |
| | ) | |
| SAMUEL STEVEN HYDE | ) | |

## MEMORANDUM OPINION

Defendant, Samuel Steven Hyde, was sentenced on October 28, 2004, to concurrent terms of seventy months for receiving material containing images of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The case now is before the court on defendant's motion for an amended judgment and a revised commitment order. *See* doc. no. 21. The motion is based upon the following statement in defendant's judgment and commitment order: "Alternatively, should the sentencing guidelines be determined unconstitutional, the defendant is committed to . . . be imprisoned for a term of 16 months. . . ." Doc. no. 19, at 2. That language was included because defendant's sentences were imposed during the period of uncertainty following the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), which addressed the State of Washington's determinate sentencing scheme, and held that such sentencing regimens violated a defendant's Sixth

Amendment right to trial by jury whenever a trial judge imposed a sentence that was not based solely upon "facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303.[1]  That holding cast a long and foreboding shadow over the United States Sentencing Guidelines, created as a result of the Sentencing Reform Act of 1984, and generated doubt about their continuing validity.

During the interregnum between the *Blakely* opinion and the Supreme Court's subsequent decisions in *United States v. Booker*, 543 U.S. 220 (2005), specifically addressing the United States Sentencing Guidelines, it was the practice of some judges in this district, as well as other districts, to pronounce alternative sentences.[2]

_____

[1] *See also Ring v. Arizona*, 536 U.S. 584, 588-89 (2002) (holding that it is impermissible for "the trial judge, sitting alone," to determine the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty); *id*. at 602 ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt."); *id*. at 605 "[T]he characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the questions 'who decides,' judge or jury."); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) (stating that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than [a] prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt") (alteration added).

[2] *See*, *e.g.*, *United States v. Robles*, 408 F.3d 1324, 1326 (11th Cir. 2005) (observing that the district court rejected the defendant's *Blakely* challenge, "but due to the uncertainty surrounding the continued viability of the guidelines, the Government requested that the court enter an alternative sentence"); *United States v. Navas-Ralda*, 133 Fed. Appx. 729, 2005 WL 1334534, at *2 (11th Cir. 2005) (observing that the "district court explained that the 15-month enhanced sentence imposed was consistent with our then-binding interpretation of *Blakely*, but the court also explained that 'if the Supreme Court . . . in *Blakely* goes a different direction, then the lesser sentence is in the alternative'"); *United States v. Njanja*, 133 Fed. Appx. 636, 638, 2005 WL 1220845, at *2 (11th Cir.

In such cases, the sentences actually imposed were based upon facts that, if disputed by a defendant, were judicially determined under a preponderance of the evidence standard.  Further, and as stated in the language that is the focus of the present motion, the alternative sentence was intended to apply only in the event the Supreme Court subsequently extended the rationale for the decision in *Blakely* to the United States Sentencing Guidelines, declared those Guidelines to be "unconstitutional," and directed district courts to resentence defendants *solely* upon the basis of facts that were admitted by a defendant, or pled in an indictment and proven to the unanimous satisfaction of a jury beyond a reasonable doubt.[3]

As is so often the case, the crisp clarity of hindsight causes this court to doubt the wisdom of pronouncing alternative sentences.  Nevertheless, this case is an example of that (in retrospect) ill-conceived practice.

---

2005) (observing that, after determining that *Blakely* did not apply to the U.S. Sentencing Guidelines, and sentencing the defendant to 37 months of imprisonment, the low end of the Guidelines range as computed without regard to *Blakely's ratio decidendi*, the district judge also imposed an alternate sentence of 30 months, "in the event *Blakely* comes down so we don't have to trouble her with coming back again if it's going to be lowered by two more levels").

[3] Consistent with this practice of pronouncing alternative sentences, the probation officers serving the judges of the Northern District of Alabama prepared presentence reports that contained two sets of offense level computations.  The first contemplated the possible extension of the rationale for the Supreme Court's holding in *Blakely v. Washington* to the U.S. Sentencing Guidelines and, thus, was based only upon facts admitted by a defendant or established by jury verdict.  The second set of computations was prepared in the normal way:  that is, not only upon the basis of admitted facts, but also other facts that, if disputed by a defendant, the probation officer believed could be established by a preponderance of the evidence.

## SUMMARY OF UNDERLYING FACTS

Samuel Steven Hyde waived indictment[4] and, on April 20, 2004, entered pleas of "guilty" to both counts of a two-count Information.[5]  Sentencing was postponed until July 21, 2004.  A presentence investigation report was disclosed on June 15, 2004, and defendant filed written objections on June 24, 2004.  *See* doc. no. 9.  The following day, defendant filed a motion for permission to file additional, "out-of-time objections" to his presentence report.[6]  The pertinent portion of that motion read as

---

[4] See doc. no. 2 (Waiver of Indictment filed Mar. 3, 2004).

[5] The relevant portions of the Information (doc. no. 1) read as follows:

COUNT ONE: (18 U.S.C. § 2252A(a)(2)(A))

The United States Attorney charges:  That from on or about the 1st day of March, 2003, and continuing until on or about the 11th day of June, 2003, in Morgan County, within the Northern District of Alabama, the defendant, SAMUEL STEVEN HYDE, did knowingly receive material that contained images of child pornography, as that term is defined in Title 18, United States Code, Section 2256(8)(A), that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(2)(A).

COUNT TWO: (18 U.S.C. § 2252A(a)(5)(B))

The United States Attorney charges:  That from on or about the 11th day of June, 2003, in Morgan County, within the Northern District of Alabama, the defendant, SAMUEL STEVEN HYDE, did knowingly possess material that contained images of child pornography, as that term is defined in Title 18, United States Code, Section 2256(8)(A), that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

[6] Fed. R. Crim. P. 32(f)(1) requires a defendant to file any objections within fourteen days after receiving a copy of the presentence report.

4

follows:

> 1.     The United States Supreme Court decided the case [of] *Blakely v. Washington* on June 24, 2004.
>
> 2.     The Blakely case may apply to some of the sentencing issues in this case.   However, the undersigned has not had the opportunity to closely review the Blakely opinion to determine [its] possible applicability to the instant case.
>
> Wherefore, premises considered, the undersigned moves . . . for permission to file possible out of time objections to the pre-sentence investigative report.

Doc. no. 10.  The motion was granted, and sentencing was continued until October 28, 2004.

Defendant filed a "Supplement to [his] Previously Filed Objections" on August 17, 2004.  *See* doc. no. 12.  Significantly, that pleading did not contain any objections based upon the rationale of the Supreme Court's decision in *Blakely v. Washington*. Instead, it submitted a psychological evaluation in support of defendant's objection to the probation officer's opinion that defendant met "the criterion for the classification of a Pedophile."[7]

---

[7] Paragraph 56 of the original (Jun. 15, 2004) presentence report — as well as paragraph 65 of the revised (Sept. 10, 2004) presentence report — contained the following statements:

> According to USPO Alton Morgado, given the years the defendant has collected child pornography, the sheer quantity of his collection, his obsession to collect more and more images and duplicate said images onto 8 X 10 glossy photographs, and the expense in increasing and maintaining his collection demonstrates an obsession/compulsion with pornography in general.  Also given the quantity of child pornography, *he meets the criterion for the classification of a*

Defendant subsequently filed, on August 31, 2004, an "Amendment to [his] Previously Filed Objections." *See* doc. no. 14.  Again, it is significant to note that this pleading also did not contain any objections based upon the rationale of the Supreme Court's decision in *Blakely v. Washington*.  Instead, the amendment (a) withdrew five objections that had been lodged in defendant's original, June 25, 2004 filing, and (b) amplified defendant's objections to the four and five level enhancements of his base offense level referenced in paragraphs 22 and 23 of the presentence report, respectively, *based upon defendant's contention that the probation officer should have consulted the 2002 edition of the Guidelines Manual*, rather than the November 5, 2003 edition.

The probation officer issued a revised presentence report, and an "Addendum" to the revised report, on September 10, 2004.  The "Addendum" stated the probation officer's response to each of defendant's written objections, and clarified that the presentence report had been revised in order to:

> *Pedophile*, *non-exclusive type*, *as specified in the DSM-IV*.  According to USPO Morgado, the time, energy, and money to collect, duplicate, arrange, and otherwise classify his pornographic cache must have been exhausting and certainly caused impairment in his social functioning.  It appears from the dates of the total pornographic cache that his interest/ability in obtaining the bulk of his child pornography coincided with his mother's last stages of debilitation due to emphysema.  [Emphasis supplied.]

Defendant objected to the opinion that he met "the criterion for the classification of a Pedophile" on the ground that "[t]here has been no testing of the defendant by a qualified mental health professional to support the conclusion of the probation officer."  Doc. no. 9, ¶ 7, at 2.

reflect use of the *April 30, 2003*, guidelines manual,

*to include alternative guideline calculations in Part A* and in paragraphs 71 and 78[8] *if the court finds that* Blakely v. Washington *is applicable*,

to correct the spelling of the [defendant's] father's name on page 2 and in paragraph 44,

to update the disposition of the pending case in paragraph 43, and

to delete the first sentence of paragraph 83.   [Italicized emphasis supplied.]

Thus, the final version of the presentence report before the court on the date of

---

[8] The probation officer is here referencing paragraphs 71 and 78 of the original (Jun. 15, 2004) presentence report, reading as follows:

71. **Guideline Provisions:**  Based on a total offense level of 27 and a criminal history category of I, the guideline range for imprisonment is 70 to 87 months.

\* \* \* \*

78. **Guideline Provisions:**  The fine range for the instant offense is from $12,500 to $125,000.  U.S.S.G. § 5E1.2(c)(3).

These two paragraphs were renumbered as paragraphs 80 and 87, respectively, in the revised (Sept. 10, 2004) presentence report, and they read as follows:

80. **Guideline Provisions:**  With application of Blakely v. Washington, based on a total offense level of 14 and a criminal history category of I, the guideline range for imprisonment is 15 to 21 months.  Without Blakely, based on a total offense level of 27 and a criminal history category of I, the guideline range for imprisonment is 70 to 87 months.

\* \* \* \*

87. **Guideline Provisions:**  With application of Blakely v. Washington, the fine range for the instant offense is $4,000 to $40,000.  Without Blakely, the fine range for the instant offense is from $12,500 to $125,000.  U.S.S.G. § 5E1.2(c)(3).

7

sentencing contained two sets of offense level computations.[9]   The first group

contemplated the possibility that this court might extend the rationale of *Blakely v.*

*Washington* to the United States Sentencing Guidelines and, accordingly, took into

account *only* those facts admitted by defendant in his plea agreement and Rule 11

plea colloquy.[10]   That portion of the report read as follows:

---

[9] *See supra* note 3.

[10] The plea agreement filed in this case contained the following statements concerning the factual basis for the offenses alleged in the Information:

Sometime during the week of March 14th, 2003, Sgt. Steve Campbell of the Decatur [Alabama] Police Department's Family Services Unit was contacted by Det. James McLaughlin of the Keene[,] New Hampshire Police Department concerning an internet child pornography case.

Det. McLaughlin told Sgt. Campbell over the phone that he had made contact with a male from Decatur, Alabama, using the web name of "Hotchild2002". When he checked with the internet provider, Yahoo, Det. McLaughlin obtained a profile of Samuel Steven Hyde.

Det. McLaughlin mailed Sgt. Campbell a copy of the pictures he had downloaded from the internet sent to him by Hyde. These pictures showed various juvenile boys in erotic poses but not engaged in sexual behavior.

On June 5th, 2003, Sgt. Campbell received another Compact Disc of pictures from Det. McLaughlin showing even more juvenile males engaged in different sexual activities. Sgt. Campbell filed an affidavit with the Municipal Court of Decatur and Judge William Cook issued a search warrant for the residence of Samuel Steven Hyde at 2404 Crestview Drive, S.E., Decatur, Alabama 35601.

A search of Hyde's room uncovered several hundred pornographic pictures, most of these containing images of children engaged in acts of deviate sexual intercourse. Also taken was Hyde's computer. A search of the hard drive produced hundreds of other images and some movies clips [sic] of actual and/or identified children engaged in sexual activity. These images had travelled in interstate and/or foreign commerce.

Doc. no. 3 (Plea Agreement and Conditions filed Mar. 3, 2004), ¶ I(c), at 2.

| Offense Level Computations (1) applying Blakely v. Washington | |
|---|---|
| 17. | The April 30, 2003, edition of the <u>Guidelines Manual</u> has been used in this case. Counts one and two were grouped pursuant to U.S.S.G § 3D1.2 (d). There is an <u>ex post facto</u> issues involved with the use of the current manual at §5K2.0. NOTE: If the Court determines that <u>Blakely v. Washington</u> is applicable: | |
| 18. | **Base Offense Level:** For a violation of 18 U.S.C. § 2252A, the Statutory Index at Appendix A directs that the guideline at U.S.S.G. § 2G2.2 or § 262.4 be applied.  There has been no indication to this officer that the defendant distributed child pornography or received or possessed child pornography with intent to distribute.  Therefore, the guideline applicable to these violations of 18 U.S.C. § 2252A is found at U.S.S.G. § 2G2.4(a), which requires a base offense level of 15. | <u>15</u> |
| 19. | **Specific Offense Characteristics:** The defendant's possession of the material resulted from the defendant's use of a computer.  Therefore, the offense level is increased by two levels pursuant to U.S.S.G. § 2G2.4 (b)(3). | <u>+2</u> |
| 20. | **Victim Related Adjustments:**  Because none of the provisions at U.S.S.G. § 3A1.1 through § 3A1.4 applied, no adjustments have been made. | <u>0</u> |
| 21. | **Adjustments for Role in the Offense:**  Because none of the provisions at U.S.S.G. § 3B1.1 through § 3B1.4 applied, no adjustments have been made. | <u>0</u> |
| 22. | **Adjustments for Obstruction of Justice:**  There has been nothing to indicate that the defendant has obstructed justice. | <u>0</u> |
| 23. | **Adjusted Offense Level (Subtotal):** | **<u>17</u>** |
| 24. | **Adjustments for Acceptance of Responsibility:** The offense level is reduced by three levels because the offense level is 16 or greater and U.S.S.G. §§ 3E1.1 (a) and (b) have been satisfied. | <u>-3</u> |
| 25. | **Total Offense Level**: | **<u>14</u>** |

A total offense level of 14, when combined with a criminal history category of I, yielded a Guidelines sentence range of 15 to 21 months of imprisonment, and a fine range of $4,000 to $40,000.

The second group of computations contained in the final presentence report

ignored the potential implications of *Blakely*, and computed defendant's offense level in the usual way: that is, not only upon the basis of facts admitted by the defendant, but also other facts that, if disputed, the probation officer believed could be established by a preponderance of the evidence. That section of the final report read as follows:

| | Offense Level Computations (2) not applying Blakely v. Washington | |
|---|---|---|
| 26. | The April 30, 2003, edition of the <u>Guidelines Manual</u> has been used in this case. Counts one and two were grouped pursuant to U.S.S.G § 3D1.2 (d). There is an <u>ex post facto</u> issue involved with the use of the current manual at §5K2.0. | |
| 27. | **Base Offense Level:** For a violation of 18 U.S.C. § 2252A, the Statutory Index at Appendix A directs that the guideline at U.S.S.G. § 2G2.2 or § 2G2.4 be applied. There has been no indication to this officer that the defendant distributed child pornography or received or possessed child pornography with intent to distribute. Therefore, the guideline applicable to these violations of 18 U.S.C. § 2252A is found at U.S.S.G. § 2G2.4(a), which requires a base offense level of 15. | <u>15</u> |
| 28. | **Specific Offense Characteristics:** The material involved prepubescent minors and/or minors under the age of twelve years. Therefore, the offense level is increased by two levels pursuant to U.S.S.G. § 2G2.4 (b)(1). | <u>+2</u> |
| 29. | **Specific Offense Characteristics:** The offense involved possession of ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor. Therefore, the offense level is increased by two levels pursuant to U.S.S.G. § 2G2.4 (b)(2). | <u>+2</u> |
| 30. | **Specific Offense Characteristics:** The defendant's possession of the material resulted from the defendant's use of a computer. Therefore, the offense level is increased by two levels pursuant to U.S.S.G. § 2G2.4 (b)(3). | <u>+2</u> |
| 31. | **Specific Offense Characteristics:** The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Therefore, the offense level is increased by four levels pursuant to U.S.S.G. § 2G2.4 (b)(4). | <u>+4</u> |

| Offense Level Computations (2) not applying Blakely v. Washington | | |
|---|---|---|
| 32. | **Specific Offense Characteristics:** The offense involved more than 600 images.  Therefore, the offense level is increased by five levels pursuant to U.S.S.G. § 2G2.4 (b)(5)(D). | +5 |
| 33. | **Victim Related Adjustments:** Because none of the provisions at U.S.S.G. § 3A1.1 through § 3A1.4 applied, no adjustments have been made. | 0 |
| 34. | **Adjustments for Role in the Offense:** Because none of the provisions at U.S.S.G. § 3B1.1 through § 3B1.4 applied, no adjustments have been made. | 0 |
| 35. | **Adjustments for Obstruction of Justice:** There has been nothing to indicate that the defendant has obstructed justice. | 0 |
| 36. | **Adjusted Offense Level (Subtotal):** | **30** |
| 37. | **Adjustments for Acceptance of Responsibility:** The offense level is reduced by three levels because the offense level is 16 or greater and U.S.S.G. §§ 3E1.1 (a) and (b) have been satisfied. | -3 |
| 38. | **Total Offense Level:** | **27** |

A total offense level of 27, when combined with a criminal history category of I, yielded a Guidelines sentence range of 70 to 87 months of imprisonment, and a fine range of $12,500 to $125,000.

At the sentencing hearing held on October 28, 2004, defendant withdrew *all* objections *except* his contention that the probation officer should have used the *2002 edition* of the Guidelines Manual when computing the applicable offense level, rather than either the November 5, 2003, or April 30, 2003 editions employed in the original and revised presentence reports, respectively.[11]  This court overruled that objection, adopting as the basis for its ruling the written response of the probation officer from

---

[11] *See* Transcript of Oct. 28, 2004 Sentencing Hearing ("Tr."), at 2-3; *see also* doc. no. 14 ("Amendment to Defendant's Previously Filed Objections").

the September 10, 2004 Addendum.[12]

After ruling upon defendant's sole objection and adopting the factual statements contained in the revised presentence report, this court observed that, even though there then was "a great deal of confusion and difference of opinion concerning the application of the rationale of the Supreme Court's decision . . . in *Blakely v. The State of Washington* to the United States Sentencing Guidelines," binding precedent required the court to apply the Guidelines.[13]  *See*, *e.g.*, *United States v. Reese*, 382

_____

[12] Tr. at 3.  The pertinent portion of the Sept. 10, 2004 Addendum read as follows:

> Reference is made to U.S.S.G. § 1B1.11 which states that the court shall use the guideline manual in effect on the date that the defendant is sentenced unless use of that manual would violate the *ex post facto* clause of the U.S. Constitution.  In that case the court should use the manual in effect on the date that the offense of conviction was committed.  If the defendant is convicted of two offenses, the first committed before and the second after a revised edition of the manual became effective, the revised edition is to be applied for both offenses even if it results in an increased penalty for the first offense (comment.(backg'd).  Application Note 2 states that *the last date of the offense of conviction is the controlling date for ex post facto purposes*.

> Count one charged the defendant committed the offense from March 1, 2003, until June 11, 2003.  Count two charged that the defendant committed the offense on June 11, 2003.  The manual in effect at the time of the offense is the April 30, 2003 edition, and the manual in effect at [the] time of sentencing is the November 5, 2003 edition.  It is the opinion of the probation office that it is reasonably arguable that the standard of departure in U.S.S.G. § 5K2.0 of the November 5, 2003 edition would create an *ex post facto* issue.  With this exception, use of either the November 5, 2003, or the April 30, 2003, edition would result in the same guideline calculation. Therefore, the presentence has been amended to reflect that the April 30, 2003, edition has been used.  No change has been made to the offense characteristics listed in paragraphs 22 and 23 of the presentence report disclosed on June 15, 2004.  [All emphasis in original.]

[13] Tr. at 6.

12

F.3d 1308, 1312 (11th Cir. 2004) ("We hold that district courts should continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue.") (citations and footnote omitted), *vacated and remanded,* 543 U.S. 1114 (2005).[14]

After pronouncing concurrent sentences of 70 months of imprisonment for the offenses of conviction, this court said:

> In the event that the Supreme Court determines that this sentence is unconstitutional or unlawful because of the application of the rationale of *Blakely v. Washington* to the Federal Sentencing Guidelines, your new sentence will be 16 months in federal custody. Again, the two sentences will run concurrently.[15]

Near the conclusion of the sentencing hearing — and after reminding defendant of his right to appeal the sentences imposed, if he believed the Guidelines had been misapplied, or that the sentence otherwise was in violation of the law — this court

---

[14] *Accord United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (*en banc*) (holding that *Blakely* did not invalidate the sentencing guidelines, and, that the guidelines did not violate the Sixth Amendment); *United States v. Mincey*, 380 F.3d 102 (2d Cir.2004) (holding that, absent a Supreme Court ruling to the contrary, the Sixth Amendment did not require that every enhancement factor under the sentencing guidelines be pleaded in an indictment and proven to a jury beyond a reasonable doubt); *United States v. Hammoud*, 378 F.3d 426 (4th Cir.2004) (*en banc*) (holding that *Blakely* did not invalidate the sentencing guidelines, and directing district courts within the circuit to continue sentencing defendants in accordance with the guidelines); *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004) (holding that *Blakely* did not compel a departure from the long-embraced distinction between guideline ranges and the maximum penalties established by statutes). *Cf. United States v. Diaz-Clark*, 292 F.3d 1310, 1315 (11th Cir. 2002) (holding that district courts have no "inherent power" to fashion sentences outside "the specific parameters set forth by . . . federal statutory provisions controlling sentencing, as well as the Federal Rules of Criminal Procedure").

[15] Tr. at 9.

said:

> Defendants may waive such rights as part of a plea agreement, however.  You, in fact, executed a plea agreement which purports to waive some or all of your rights to appeal the sentence[s] that I have imposed upon you.  For that reason, I inform you that such waivers are generally enforceable.

> Nevertheless, and in addition, there are two things that I wish to say about that.  First, if you believe the specific language of the appeal waiver contained in your plea agreement is unenforceable, you still can present that theory to an appellate court.  *Secondly*, *and more importantly*, on the date that you executed your plea agreement, I don't recall whether *Blakely v. Washington* had been decided by the Supreme Court.  Even if it had, I am not sure that any of us comprehended the momentous changes that it portended for the Federal Sentencing Guidelines.

> *Any appeal waiver must be knowingly and intelligently entered*.  And I say to you that I don't believe that anyone could have intelligently executed such an appeal waiver on the date that you did so because the full ramifications or potential ramifications of *Blakely v. Washington* have only become apparent since that date; and furthermore, the issue has yet to be decided.  And, therefore, and — well, there is a third point that I should raise.

> The difference in the range of sentence that applies to your case, depending upon whether the Sentencing Guidelines are valid or not[,] is as stark and gross as I have seen.  *And*, *therefore*, *in my judgment*, *you still can appeal the sentence[s] on that basis if you choose, because you are looking at a swing between 16 months and 70 months*.

> *Have you understood what I have said to you*?

> THE DEFENDANT:  Yes, sir.

> THE COURT:  All right.  *Do you have any questions about*

14

*anything I have said*?

THE DEFENDANT:  No, sir.[16]

### *UNITED STATES v. BOOKER*

On January 12, 2005, two and a half months after defendant's sentencing, the

Supreme Court handed down its opinions in the consolidated cases of *United States*

*v. Booker* and *United States v. Fanfan*, 543 U.S. 220 (2005) ("*Booker*").   The

questions presented by the Court's grant of writs of *certiorari* in the two cases were

stated as follows:

> 1. Whether the Sixth Amendment is violated by the imposition of
> an enhanced sentence under the United States Sentencing Guidelines
> based on the sentencing judge's determination of a fact (other than a
> prior conviction) that was not found by the jury or admitted by the
> defendant.
>
> 2. If the answer to the first question is "yes," the following
> question is presented:  whether, in a case in which the Guidelines would
> require the court to find a sentence-enhancing fact, the Sentencing
> Guidelines as a whole would be inapplicable, as a matter of severability
> analysis, such that the sentencing court must exercise its discretion to
> sentence the defendant within the maximum and minimum set by statute
> for the offense of conviction.

*Booker*, 543 U.S. at 229 n.1 (citation and internal quotation marks omitted).   The

Court's answer to these questions was most unusual, in that the decision was written

in separate parts, each authored by different Justices for different majorities.

---

[16] Tr. at 15-16 (emphasis and alterations added).

The first majority opinion was written by Justice Stevens, and it was joined by Justices Scalia, Souter, Thomas, and Ginsburg.  This portion of the *Booker* decision concluded that the Sixth Amendment, as construed in *Blakely*, applied to the United States Sentencing Guidelines, *id*. at 227, and held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proven to a jury beyond a reasonable doubt."  *Id*. at 244 (Stevens, J.).[17]

The question of the appropriate remedy was answered in the second part of the *Booker* opinion, written by Justice Breyer for himself, Chief Justice Rehnquist, and Justices O'Connor, Kennedy, and Ginsburg.[18]  The Breyer majority concluded that

---

[17] The opinion of the Stevens majority in Part One of the *Booker* decision was rooted in two, well-settled principles of the common law:  first, "the Constitution protects every criminal defendant 'against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,'" 543 U.S. at 230 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)); and second, a criminal defendant also is guaranteed "the right to demand that a jury find him guilty of all the elements of the crime." *Id*. (citing *United States v. Gaudin*, 515 U.S. 506, 511 (1995)).  When combined, these guarantees protect a criminal defendant's right to have the jury find the existence of "'any particular fact' that the law makes essential to his punishment"; and, this right is transgressed when a trial judge imposes a sentence not based solely on "'facts reflected in the jury verdict or admitted by the defendant.'"  *Id*. at 232 (quoting *Blakely v. Washington*, 542 U.S. 296, 301, 303 (2004)).  The Stevens majority also found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [*Blakely*]."  *Booker*, 543 U.S. at 233.  Both systems were mandatory, and imposed binding requirements on sentencing judges — facts that implicated the Sixth Amendment in a way it would not be implicated if the Guidelines were advisory, and non-binding.  *See Booker*, 543 U.S. at 233 (Stevens, J.).

[18] Chief Justice Rehnquist, and Justices O'Connor, Kennedy, and Breyer had dissented in the *Blakely* case.  Justice Ginsberg, who was a part of the majority in the *Blakely* decision, was the fifth

the Sixth Amendment's requirement for a jury finding of all facts that determined the

sentence to be imposed upon a defendant did not require the invalidation of the entire

Sentencing Reform Act of 1984, which resulted in the creation of the federal

sentencing guidelines.  *See Booker*, 543 U.S. at 258 ("[W]e nevertheless do not

believe that the entire statute must be invalidated.  Most of the statute is perfectly

valid.") (citations omitted).  Instead, the Breyer majority concluded that the Act could

be salvaged by severing those provisions that made the sentencing guidelines

*mandatory*[19] — thereby creating an "advisory" Guidelines system that retained "a

_____

vote in each part of the *Booker* opinion.

[19] This conclusion was the linchpin that joined the two halves of the *Booker* decision.  For example, the Stevens majority said in Part One of the opinion that:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.  See *Apprendi*, 530 U.S., at 481; *Williams v. New York*, 337 U.S. 241, 246 (1949).  Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible.  For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Booker*, 543 U.S. at 233 (Stevens, J.).  *See also id*. at 259, where Justice Breyer said, in speaking for the second majority,

> we must sever and excise two specific statutory provisions:  the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure), see 18 U.S.C.A. § 3553(b)(1) (Supp.2004), and the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range,

strong connection between the sentence imposed and the offender's real conduct — a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *Id*. at 246.

## DISCUSSION

Defendant's motion is due to be denied for several reasons.  Foremost among these is the fact that *Booker* did not declare the Guidelines irremediably "unconstitutional," in the sense of prohibiting their use in all federal sentencing procedures.  Instead, the result of *Booker's* two majority opinions was the creation of an "advisory" Guidelines system, under which district courts are "not bound to apply the Guidelines," but still "*must consult* those Guidelines and *take them into account* when sentencing." *Id*. at 264 (emphasis supplied).  Thus, sentencing judges may "tailor the sentence in light of other statutory concerns," such as those listed in 18 U.S.C. § 3553(a).  *Id*. at 245-46 (citations omitted).  *See*, *e.g.*, *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (*per curiam*) (holding that sentencing post-*Booker* requires two steps: "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines, [and then consider the 18 U.S.C. § 3553(a) factors] to determine a reasonable sentence.") (citing *United*

---

see § 3742(e) (main ed. and Supp.2004) (see Appendix, infra, for text of both provisions). With these two sections excised (and statutory cross-references to the two sections consequently invalidated), the remainder of the Act satisfies the Court's constitutional requirements.

*States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005)).

Of course, on the date of sentencing in this case, this court had not anticipated the result actually achieved by the two majority opinions in *Booker*. And, even though this Court sentenced defendant to a term of imprisonment of 70 months on the basis of Guidelines then considered "mandatory,"[20] defendant still is not entitled to the relief he seeks. Both holdings in *Booker* — the Sixth Amendment holding of the Stevens majority, and the remedial reinterpretation of the Sentencing Reform Act by the Breyer majority — applied only to cases that either were not yet final, or that were on direct appeal, on the date the two opinions were issued. *Booker*, 543 U.S. at 268 (Breyer, J., maj. op.) (citing, *e.g.*, *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past")). Yet, despite being admonished by this court to ignore the appeal waiver language contained in his plea agreement, and to appeal the sentences that had been imposed without regard to the rationale of *Blakely*,[21] defendant did not do so. Had he done so,

---

[20] See the text accompanying note 13 *supra*, and, *e.g.*, *United States v. Reese*, 382 F.3d 1308, 1312 (11th Cir. 2004) ("We hold that district courts should continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue.") (citations and footnote omitted), *vacated and remanded*, 543 U.S. 1114 (2005).

[21] *See supra* note 16 and accompanying text.

his appeal undoubtedly would have been pending in the Eleventh Circuit on January 12, 2005, the date on which the Supreme Court handed-down the *Booker* opinions.

In addition, prior to sentencing, defendant withdrew *all* objections to the presentence report, *except* his contention that the probation officer should have used the 2002 edition of the Guidelines manual when computing his offense level.[22]  By doing so, defendant tacitly admitted the factual underpinnings for the enhancements recited in paragraphs 29-32 of the presentence report, that resulted in a Guidelines sentence range of 70 to 87 months of imprisonment.

Moreover, defendant's sentence became final when the time for filing a direct appeal expired.  *See*, *e.g.*, *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000) ("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted.") (citing *United States v. Dayton*, 981 F.2d 1200, 1203 (11th Cir. 1993)).[23]  The authority of a district court to change,

---

[22] See note 11 *supra* and accompanying text.

[23] The time for filing notice of appeal expired no later than Nov. 19, 2004: *i.e.*, ten days after the written judgment of conviction and order of commitment to custody was formally entered of record on the criminal docket sheet, excluding intervening Saturdays and Sundays. *See* Fed. R. App. P. 4(b)(1)(A) (providing, in pertinent part, that, in a criminal case, "a defendant's notice of appeal must be filed in the district court within 10 days after . . . the entry of either the judgment or the order being appealed"), and Fed. R. App. P. 26(a)(1), (2) (providing that the day on which the judgment and commitment order was filed is excluded when computing the period of time for appeal, as also are "intermediate Saturdays, Sundays, and legal holidays when the period is less then 11 days").  As recorded on the face of doc. no. 19 (Judgment and Commitment Order), even though sentence was orally pronounced on Oct. 28, 2004, the formal judgment of conviction and order of commitment was not signed until Nov. 3, 2004, and not filed by the Clerk until Nov. 5, 2004.  Accordingly, pursuant to the rules cited above, Nov. 5-7, and 13-14, 2004, were excluded when counting the ten-

correct, modify, or reduce a sentence that has become final is limited by statute and

the Federal Rules of Criminal Procedure.  Thus, 18 U.S.C. § 3582 provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > >
> > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
> >
> > (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

---

day period during which defendant could have filed a notice of appeal.

>        (2) in the case of a defendant who has been sentenced to a term of
> imprisonment based on a sentencing range that has subsequently been
> lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*),
> upon motion of the defendant or the Director of the Bureau of Prisons,
> or on its own motion, the court may reduce the term of imprisonment,
> after considering the factors set forth in section 3553(a) to the extent
> that they are applicable, if such a reduction is consistent with applicable
> policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).  The Director of the Bureau of Prisons has not moved to reduce

defendant's term of imprisonment (§ 3582(c)(1)(A)), and defendant's sentence was

not based on a sentencing range that was subsequently lowered by the Sentencing

Commission (§ 3582(c)(2)).  Accordingly, defendant's motion may be granted only

if it is permitted by Rule 35 of the Federal Rules of Criminal Procedure (§

3582(c)(1)(B)).

Rule 35 addresses the subject of "Correcting or Reducing a Sentence."  The

text of that Rule, as it existed on November 5, 2004 — the date on which defendant's

judgment and commitment order was filed by the Clerk, and prior to the December

1, 2004 effective date of the April 26, 2004 amendments to the rule — read as

follows:

>        **(a) Correcting Clear Error**.  Within 7 days after sentencing, the
> court may correct a sentence that resulted from arithmetical, technical,
> or other clear error.

>        **(b) Reducing a Sentence for Substantial Assistance**.
>        **(1) In General**.  Upon the government's motion made

22

within one year of sentencing, the court may reduce a sentence if:

        **(A)** the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and

        **(B)** reducing the sentencing accords with the Sentencing Commissions's guidelines and policy statements.

        **(2) Later Motion**.  Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

        **(A)** information not know to the defendant until one year or more after sentencing;

        **(B)** information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or

        **(C)** information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

        **(3) Evaluating Substantial Assistance**.  In evaluating whether the defendant has provided substantial assistance, the court may consider the defendant's presentence assistance.

        **(4) Below Statutory Minimum**.  When acting under rule 35(b), the court may reduce the sentence to a level below the minimum sentence established by statue.

Fed. R. Crim. P. 35 (2003).

        Defendant does not come under any of the provisions of Rule of 35 that might permit the relief he seeks:  *i.e.*, (a) far more than seven days elapsed between

imposition of sentence and the present motion; and (b) the government has not moved to reduce the sentence imposed, based upon defendant's substantial assistance. Therefore, this court lacks jurisdiction to "amend" the judgment. *See*, *e.g.*, *United States v. Diaz-Clark*, 292 F.3d 1310 (11th Cir. 2002) (holding that the seven-day time period for modifying sentences found in Fed. R. Crim. P. 35(a) is jurisdictional, and that, following the expiration of that time limit, and, in the absence of a habeas petition or motion of the government, a district court does not have inherent authority to modify a sentence).

Furthermore, *Booker* does not apply to collateral challenges to sentences imposed prior to the opinions in that case. *See*, *e.g.*, *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir. 2005).

Finally, neither of the majority opinions in *Booker* vested this court with authority to modify defendant's sentence under the circumstances of this case. Even if this court possessed such authority, it would not be bound to impose the alternative sentence of 16 months pronounced at the sentencing hearing. In fact, this court would not do so, since we now know that extra-verdict enhancements still must be considered, and may be applied, under the advisory Guidelines system announced in *Booker*. Stated differently, trial judges now know that Guideline offense levels reached by reliance on facts found by a preponderance of the evidence are

24

constitutional when considered within the context of an advisory Guidelines scheme. Indeed, the "guideline range remains the starting point for the sentencing decision. And, if the district court decides to impose a sentence outside that range, it should explain the reasons for doing so." *United States v. White*, 405 F.3d 208, 219 (4th Cir. 2005) (internal citations omitted). *See also*, *e.g.*, *Talley*, 431 F.3d at 786 (holding that post-*Booker* sentencing involves two steps:  first calculate the guideline range, and then consider the factors listed in 18 U.S.C. § 3553(a) to determine a reasonable sentence).

The sentences imposed upon this defendant reflect the seriousness of the offenses of conviction; afford adequate deterrence, both to this defendant specifically, and generally, in the sense of deterring others like him, who may be inclined to engage in similar conduct; provide needed correctional treatment and therapy for defendant's perversions; and, because the facts as found are the kind of facts contemplated by the Sentencing Commission, the sentences imposed avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a).

In short, this court believes the sentences originally imposed were reasonable, even when considered within the context of an advisory Guidelines sentencing system.  *See*, *e.g.*, *United States v. Robles*, 408 F.3d 1324, 1327-28 (11th Cir. 2005).

25

For all of the foregoing reasons, defendant's motion for an amended judgment and a revised commitment order will be denied.  An appropriate order consistent with this memorandum opinion will be entered.

**DONE** this 25th of September 2006.

_____

United States District Judge

26